# MINIDOKA & SOUTHWESTERN RAILROAD COMPANY *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 19.   Argued October 29, 30, 1914.—Decided November 30, 1914.

Under the policy of the Government to encourage the building of railroads in the western States, Congress has in some cases granted land to aid in construction and has also provided the means by which those companies not having such grants can, under reasonable conditions, acquire rights of way over public lands.

While the right of way statute only applies to public lands and, therefore, does not apply to lands segregated from the public domain by homestead entries, settlers may, under § 2288, Rev. Stat., grant rights of way over land before final proof.

Nothing in the Reclamation Act of June 17, 1902, 32 Stat. 388, affects the provision of § 2288, Rev. Stat., permitting a homesteader without patent, but in lawful possession, to grant to a railroad company a right of way across his claim.

The privileges for granting to railroad companies rights of way over homesteaders' land under entry were renewed and extended by the act of March 3, 1905, c. 1424, 33 Stat. 991.

In this case, *held* that the various acts of Congress in effect operated to give the consent of the United States to the construction of a railroad as an instrumentality of commerce across the lands of those homesteaders within the limits of the Minidoka Irrigation Project in Idaho who gave deeds for the right of way to the railroad company.

190 Fed. Rep. 491, reversed, and 176 Fed. Rep. 762, affirmed.

THE facts, which involve the construction of acts of Congress regarding railroad rights-of way and the right of entrymen within the reclamation projects to deed rights of way for railroads, are stated in the opinion.

*Mr. Henry W. Clark* and *Mr. A. A. Hoehling, Jr.*, with whom *Mr. P. L. Williams* was on the brief, for appellants:
The authority to convey a right of way for railroad pur-

poses expressly given to homestead settlers by § 2288, Rev.
Stat., is not impaired by the provisions of the Reclamation
Act.

The lands in question were not public lands and there
was no authority under the general right of way act of
1875 for the filing or approval of a map of definite location
affecting them.

The right of way granted by the homestead settlers
under the authority of § 2288 is complete and perfect. The
statute itself operates as the consent of the Government
to subject its interest in the land to the right of way
during the life of the homestead entry and also after for-
feiture of the homestead.

The dictum of the Circuit Court of Appeals that the
general right of way act requires the filing of a profile of
the road rather than a map of alignment or definite
location is contrary to the practice of nearly forty
years.

In support of these contentions see *Alexander* v. *Kansas
City R. R. Co.*, 138 Missouri, 464; *Bardon* v. *Nor. Pac.
R. R. Co.*, 145 U. S. 535; *Barker* v. *Harvey*, 181 U. S.
481; *Dakota Cent. R. R. Co.* v. *Downey*, 8 L. D. 115; *James-
town &c. R. R. Co.* v. *Jones*, 7 No. Dak. 619; *S. C.*, 177
U. S. 125; *Kern Valley Water Co.*, 15 L. D. 577; *Montana
Cent. R. R. Co.*, 25 L. D. 250; *Northern Lumber Co.* v.
*O'Brien*, 204 U. S. 190; *Regulations under General Right of
Way Act*, 33 L. D. 481; *Santa Fe &c. R. R. Co.*, 22 L. D.
685; *Stalker* v. *Oregon Short Line*, 225 U. S. 142; *Un. Pac.
R. R. Co.* v. *Harris*, 215 U. S. 386; *United States* v. *Bu-
chanan*, 232 U. S. 72.

*Mr. Assistant Attorney General Knaebel*, with whom
*Mr. W. W. Dyar* was on the brief, for the United
States:

The right to build and operate a railroad through a
reclamation project without consulting the Government

should not be adjudged to exist unless plainly conferred by some act of Congress.

The act of March 3, 1873, as amended, does not empower the entrymen to authorize the construction of a railroad through a reclamation project without the consent of the Secretary of the Interior.

The act merely authorizes the settler to relinquish in part the privileges which he enjoys under the settlement law, not to convey the title or to impair in any, way the interest of the Government.

As to lands which, like the lands of reclamation projects, are affected by a special public interest, the act of March 3, 1873, if applicable at all, should be construed as a means of securing the consent of the settler to the uses mentioned, but not to permit those uses in the absence of governmental approval.

Construed *in pari materia* with the Reclamation Act, the act of March 3, 1873, as amended, can be deemed operative only in so far as consistent with the proper management and welfare of such projects. This necessarily implies that the transfers of the settlers must remain ineffectual if not approved or if objected to by the Government through the Secretary of the Interior.

Under the statute no vested right arises against the Government until a map showing the railroad location has been filed with and approved by the Secretary of the Interior.

The withdrawn lands were excluded from the operation of the statute by the terms of the statute itself.

Independently of its own express provisions, which require approval by the Secretary and exclude lands specially reserved, the act of 1875, when construed *in pari materia* with the Reclamation Act, does not authorize railroad construction in reclamation projects against the objection of the Secretary of the Interior.

In support of these contentions see *Anderson* v. *Carkins,*

135 U. S. 483; *Buxton* v. *Traver*, 130 U. S. 232; *Cascade Corporation* v. *Railsback*, 59 Washington, 376; *Commonwealth* v. *Davis*, 12 Bush (Ky.), 240; *Dakota Cent. R. R. Co.* v. *Downey*, 8 L. D. 115; *Davis* v. *Foreman*, 14 L. D. 146; *Eimer* v. *Wellsand*, 93 Minnesota, 444; *Enoch* v. *Spokane Falls & N. Ry. Co.*, 6 Washington, 393; *Five Per Cent Cases*, 110 U. S. 471; *Frisbie* v. *Whitney*, 9 Wall. 187; *Hall* v. *Russell*, 101 U. S. 503; *Hutchings* v. *Low*, 15 Wall. 77; *Jamestown & N. R. R. Co.* v. *Jones*, 177 U. S. 125; *Knight* v. *Land Ass'n*, 142 U. S. 161; *Larsen* v. *Navigation Co.*, 19 Oregon, 240; *Little* v. *Williams*, 231 U. S. 335; *McCune* v. *Essig*, 118 Fed. Rep. 273; *Minneapolis, &c. Ry. Co.* v. *Doughty*, 208 U. S. 251; *Noble* v. *Union River Logging Co.*, 147 U. S. 165; *Phœnix &c. R. R. Co.* v. *Arizona R. R. Co.*, 9 Arizona, 434; *Picard* v. *McCormick*, 11 Michigan, 68; *Railway Co.* v. *Sture*, 32 Minnesota, 95; *Schenck* v. *Saunders*, 13 Gray, 37; *Scott* v. *Carew*, 196 U. S. 100; *Shepley* v. *Cowan*, 91 U. S. 330; *Smith* v. *Townsend*, 148 U. S. 490; *Spokane Falls Ry. Co.* v. *Ziegler*, 167 U. S. 65; *Stalker* v. *Oregon Short Line*, 225 U. S. 142; *Swigart* v. *Baker*, 229 U. S. 187; *Union Pac. R. R. Co.* v. *Harris*, 215 U. S. 386; *United States* v. *Blendaur*, 128 Fed. Rep. 910; *United States* v. *Minidoka & S. W. R. R. Co.*, 176 Fed. Rep. 762; *S. C.*, 190 Fed. Rep. 491; *United States* v. *Rickey Land Co.*, 164 Fed. Rep. 496; *Washington &c. R. R. Co.* v. *Osborn*, 160 U. S. 103; *Weyerhaeuser* v. *Hoyt*, 219 U. S. 380; *Wilcox* v. *Jackson*, 13 Pet. 496; *Williamson* v. *Berry*, 8 How. 495; Act of March 3, 1873, 17 Stat. 602; Act of March 3, 1875, 18 Stat. 482; Act of March 3, 1877, 19 Stat. 377; Act of June 3, 1878, 20 Stat. 89; Act of March 3, 1891, 26 Stat. 1097; Act of June 17, 1902, 32 Stat. 388; Act of March 3, 1905, 33 Stat. 991; Rev. Stat., §§ 2257, 2288, 2289–2291, 2353–2379.

See also Bouvier's Law Dict. 943; Rapalje & Lawrence Law Dict. 1144; Regulations under Act of March 3, 1875, 12 L. D. 423; 14 L. D. 338.

MR. JUSTICE LAMAR delivered the opinion of the court.

The Minidoka & Southwestern Railroad Company was authorized by its charter to build its road along a line which ran through the Minidoka Irrigation Project in the State of Idaho. Homesteaders, without patents but lawfully in possession of irrigable land within the reclamation area, granted rights of way over their settlements to the Railroad Company.

When the Company began to build the United States sought to enjoin the work on the ground that a railroad could not be built across lands within a reclamation area without the consent of the Government. It was also claimed that the necessary embankments, excavations, bridges and culverts would interfere with the success of the irrigation works. The Company answered and relied on the conveyances from the homesteaders. After a hearing the District Court denied the injunction but made provision that the culverts should be so built as not to interfere with the flow of water through the canals and ditches (176 Fed. Rep. 762). This decree was reversed by the Circuit Court of Appeals (190 Fed. Rep. 491) on the ground that the lands in the reclamation area, though in possession of settlers, were public lands within the meaning of the Right of Way Act (March 3, 1875, c. 152, 18 Stat. 482) and that before its road could be built through the Minidoka Irrigation works the Company must obtain the consent of the Secretary of the Interior. From that decree an appeal was taken to this court.

It has always been the policy of the Government to encourage the building of railroads in the Western States, and many land grants have been made by it to aid in their construction. Congress has also provided a means by which those companies having no such grants could acquire rights of way over any portion of the public land by filing a map of definite location and securing its approval

by the Secretary of the Interior (18 Stat. 482). This law, however, by its very terms applies only to "public lands" and hence cannot be construed to empower the Secretary to authorize the building of roads across lands which had been segregated from the public domain by the entry and possession of homesteaders or preëmptors. *Bardon* v. *Northern Pac.*, 145 U. S. 535, 538; *United States* v. *Buchanan*, 232 U. S. 72, 76, and cases cited. On the other hand, settlers, without patent, were not in a position to make deeds to rights of way, not only because they had no title but also because they were prohibited from alienating such land before final proofs. Rev. Stat., § 2291. The consequence was that neither the Government nor the homesteaders could make such grants, and as the Company could not build without an assured title to its right of way, it was practically impossible to construct railroads through territory which consisted partly of public lands and partly of that which was in the possession of settlers. But it was greatly to their interest and to that of the Government that such a highway should be constructed and in order to meet the difficulty, Congress, on March 3, 1873, c. 266, 17 Stat. 602 (Rev. Stat., § 2288), passed an act providing that any *bona fide* settler might convey by warranty against his own act any part of his claim "for church, cemetery, or school purposes or for the right of way of railroads." Under this act the appellant could have constructed its road along the strip conveyed to it by the homesteaders unless, as claimed by the Government, the provisions of Rev. Stat., § 2288 as amended (March 3, 1905, c. 1424, 33 Stat. 991) have been repealed as to lands within irrigation projects and the completed Minidoka Irrigation Works.

Counsel for the United States contend that the Reclamation Act (June 17, 1902, c. 1093, 32 Stat. 388) requires that when an irrigation project is undertaken the Secretary of the Interior shall define its limits and withdraw all the

irrigable land therein from the public domain and from the operation of the general land laws: It is argued that when thus withdrawn the irrigation area constitutes a unit in which the United States has such a special interest as to require that it shall be subject to the supervision of the Secretary—he, in order to secure the success of the undertaking, having it in his power to decide whether a railroad should be built, and if so, along what line and across what lots it should be constructed. It is also argued that settlers having no patents ought not to be in a position to grant a right of way over lands which they do not own and may never acquire and thereby impose a burden upon the claim if it should afterwards come into the hands of other homesteaders.

These considerations, however, have not induced Congress to change its policy of encouraging the construction of railroads along routes designated by charters and over land in the possession of settlers. Neither have they induced Congress to confer upon the Secretary the power to grant rights of way through irrigation lands in the possession of homesteaders.

It is true that the Reclamation Act of June 17, 1902 (c. 1093, 32 Stat. 388), provides that when the Secretary of the Interior determines upon an irrigation project he must define its limits and "withdraw the irrigable lands therein from all forms of settlement, except under the homestead law," and all settlements therein shall be "subject to the limitations, charges, terms, and conditions provided in the Reclamation Act." And it is further true that the provisions of this statute do, in several important respects, modify the homestead law. The Secretary can limit the size of the homestead to ten acres, instead of the 160 acres permitted by the general law. The settler, instead of being entitled to receive a patent at the end of 5 years on compliance with the statutory conditions (Rev. Stat., §§ 2289–2291), is not permitted to make final proof and

receive a patent until he has reclaimed one-half of the irrigable area for agricultural purposes, and has also paid his proportionate share of the cost of the irrigation system in instalments,—the last of which may·not mature for ten years after entry.

There are, possibly, other provisions to meet the special conditions of lands constituting an irrigation plant. But except as modified by the specific terms of the Reclamation Act, such lands are distinctly made subject to entry under the provisions of the homestead law, and all of the homesteaders' rights therein are the same as if the settlement had been located outside of the limits of irrigation works. One of the privileges, not affected by the Reclamation Act, is that which permits the homesteader, without patent, but in lawful possession, to grant to a railroad company a right of way across his claim; and whatever reason there was for conferring this right upon those who entered land in a sparsely settled section is doubly operative as to land located within the more thickly populated reclamation areas. Manifestly this is true as to so much as may be needed for churches and school houses. It is equally so as to rights of way for railroads and other public utilities needed by the numerous residents living within the irrigation areas.

An act passed since the Reclamation Act of 1902 serves, if possible, to make clearer the fact that Congress did not intend to deprive settlers on these or any other class of lands from granting railroad rights of way. For on March 3, 1905 (33 Stat. 991), after the establishment of the Minidoka Project, Congress amended Rev. Stat., § 2288 so as to provide that "any *bona fide* settler under the preemption, homestead, *or other settlement law* shall have the right to transfer, by warranty against his own acts, any portion of his claim for church, cemetery, or school purposes, or for the right of way of railroads, telegraph, telephone, canals, reservoirs, or ditches. . . ." These

privileges were renewed and extended by this act because of the public benefits to be derived from such utilities. When, therefore, the Minidoka & Southwestern Railroad Company, in 1909, secured grants to the continuous strip through the reclamation area, the Company, by virtue of these public statutes and the private grants, was authorized to construct its road not only across the agricultural lands, but over the intervening ditches and canals. For, while the latter formed a part of the irrigation unit, they were also particularly appurtenant to the lands through and along which they ran.

These various acts of Congress operated to give its consent, in advance, to the construction of such a highway and instrumentality of commerce, notwithstanding any interest the United States may have had in the lands described in the deeds from the homesteaders to the Railroad Company.

*The decree of the Circuit Court of Appeals is reversed and that of the Circuit Court for the District of Idaho is affirmed.*