PIERCE, RESPONDENT, *v.* CHICAGO, MILWAUKEE & PUGET SOUND RY. CO., APPELLANT.

(No. 3,592.)

(Submitted February 9, 1916. Decided March 3, 1916.)

[156 Pac. 127.]

*Public Lands—Conveyance Before Patent—Railroads—Rights of Way—Cancellation of Entry—Effect on Title.*

Public Lands—Effect of Entry.
    1.  So long as there is an existing entry of record, valid on its face, the land covered by it must be regarded as withdrawn from the public domain, and title to it cannot be initiated by a new entry or otherwise.

Same—Patent—Title Relates to What Date.
    2.  Title to public lands acquired by an entryman through patent relates to the date of his entry.

Same—Entry—Cancellation—Conveyance to Railroad Before Patent—Title Acquired.
    3.  Prior to the cancellation of an entry on public land, defendant railway company had obtained a quitclaim deed to a strip thereof for right of way purposes from the entryman, filed a map of definite location of its line in the local land office, which was approved by the Secretary of the Interior, and constructed its road. After the cancellation, another person entered the land and secured patent. *Held,* in an action by the second entryman, that the railway company acquired title to the right of way strip, good as against plaintiff.

    [As to right of entryman to notice and hearing before cancellation of entry, see note in 75 Am. St. Rep. 880.]

*Appeal from District Court, Missoula County; R. Lee McCulloch, Judge.*

ACTION by Frank J. Pierce against the Chicago, Milwaukee & Puget Sound Railway Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed, with directions to dismiss.

Cause submitted on briefs of Counsel.

*Mr. Henry C. Stiff,* for Appellant; *Mr. H. H. Field,* of Counsel.

Plaintiff cannot recover for the value of the timber taken, or for the land included within the right of way, or for damages to timber or land not taken, because at the time these acts were

committed he did not have title to the land. (*Williams* v. *Southern Pac. R. Co.*, 150 Cal. 624, 89 Pac. 599; *St. Louis & S. F. R. Co.* v. *Stephenson,* 43 Okl. 676, 144 Pac. 387.) Damages resulting from appropriation of a right of way, and the construction of a railroad thereon, belong to the owner of the land at the time of such acts, and do not pass by a sale or conveyance to the vendee. Hence, if the acts complained of were not authorized, the right of action was in the United States, and did not pass to the plaintiff under his entry and patent. (*Roberts* v. *Northern Pac. R. Co.*, 158 U. S. 1, 10, 39 L. Ed. 873, 15 Sup. Ct. Rep. 756; *Eastern Oregon Land Co.* v. *Des Chutes R. Co.,* 213 Fed. 897, 901; *St. Louis & S. F. R. R. Co.* v. *Stephenson,* 43 Okl. 676, 144 Pac. 387, 389; *Northern Pac. Ry. Co.* v. *Murray,* 87 Fed. 648, 31 C. C. A. 183.)

Defendant had title to the right of way under the Act of Congress approved March 3, 1875, either by (1) actual construction, or (2) by approval of its map and its relation back to a time prior to plaintiff's entry. (See *Jamestown & N. R. R. Co.* v. *Jones,* 177 U. S. 125, 44 L. Ed. 698, 20 Sup. Ct. Rep. 568; *Northern Pac. R. Co.* v. *Barlow,* 26 N. D. 159, 143 N. W. 903; *Johnson* v. *Spokane etc. R. Co.*, 25 Idaho, 389, 137 Pac. 894; *Oregon Short Line R. Co.* v. *Quigley,* 10 Idaho, 770, 80 Pac. 401; *Stalker* v. *Oregon S. L. R. Co.*, 225 U. S. 142, 56 L. Ed. 1027, 32 Sup. Ct. Rep. 636; *Minidoka & S. W. R. R. Co.* v. *United States,* 235 U. S. 211, 216, 59 L. Ed. 200, 35 Sup. Ct. Rep. 46; *Moss* v. *Dowman,* 176 U. S. 413, 44 L. Ed. 526, 20 Sup. Ct. Rep. 429; *Hamilton* v. *Spokane etc. Ry. Co.*, 2 Idaho, 898, 3 Idaho, 164, 28 Pac. 408; *Alexander* v. *Kansas City etc. R. Co.*, 138 Mo. 464, 40 S. W. 104; *Bonner* v. *Rio Grande S. R. Co.*, 31 Colo. 446, 72 Pac. 1065; *Oregon Short Line R. Co.* v. *Quigley,* 10 Idaho, 770, 80 Pac. 401.)

Plaintiff's cause of action is barred by the statute of limitations. The cause of action is upon an obligation, or liability, not founded upon an instrument in writing, other than a contract, account or promise. For a full discussion of such a cause of action, see *Boise Valley Construction Co.* v. *Kroeger,* 17

Idaho, 384, 105 Pac. 1070; reported, with an elaborate note, in 28 L. R. A. (n. s.) 968, and *Harvey* v. *M. C. & Ft. D. R. R. Co.*, 129 Iowa, 465, 113 Am. St. Rep. 483, 3 L. R. A. (n. s.) 973, 977, 105 N. W. 958. It is an action, such as would have been called "on the case," at common law, and is therefore governed by the three-years' statute. (*Daneri* v. *Southern Cal. R. Co.*, 122 Cal. 507, 55 Pac. 243.)

*Messrs. Hall & Whitlock*, for Respondent.

The appellant proceeds upon the theory that the wrong complained of in this case was completed prior to the plaintiff's entry and that damages resulting from the appropriation of a right of way belong to the owner of the land at the time of such acts and do not pass by a sale or conveyance to a vendee. This rule does not apply to cases where condemnation proceedings have been begun but not concluded prior to the sale of the land, and in such case the conveyance carries the damage to the vendee. (*Paducah etc. Ry. Co.* v. *Stovall*, 12 Heisk. (59 Tenn.) 1; *Virginia-Carolina Ry. Co.* v. *Booker*, 99 Va. 633, 39 S. E. 591; *Little Rock etc. Ry. Co.* v. *Allister*, 68 Ark. 600, 60 S. W. 953; *Northeastern Neb. Ry. Co.* v. *Frazier*, 25 Neb. 42, 40 N. W. 604; *Obst* v. *Covell*, 93 Minn. 30, 100 N. W. 650.) It is true in this case no condemnation proceedings were begun, and for that reason an action in this case takes the place of a condemnation proceeding; for when it is terminated and the damages are paid by the railroad company, title to the strip in question thereupon vests in the railroad, and if the general rule cited by the appellant does not apply in cases where a condemnation proceeding has been begun and not completed at the time of the transfer obviously, there is all the more reason for the general rule not applying in cases where, as in this one, the taking was in the first instance wrongful and without compensation and has continued to be so ever since. There are some cases which go even further than it is necessary for us to go to sustain our contention in this regard, and they are as follows: *Beal* v. *Durham etc. R. Co.*, 136 N. C. 298, 48 S. E. 674; *Fries* v. *Wheeling etc. R. R.*

*Co.,* 56 Ohio St. 135, 46 N. E. 516; *Cincinnati etc. R. R. Co.* v. *Davis,* 10 Ohio Cir. Dec. 745, 19 Ohio C. C. 589.

We take it that the defendant in this case, as a grantee and successor in interest of the Montana company, is liable for the acts of the latter company in appropriating the land in question, regardless of when that appropriation occurred, provided there is no bar by virtue of the statute of limitations. (*Southern Ry. Co.* v. *Hood,* 126 Ala. 312, 85 Am. St. Rep. 32, 28 South. 662; *Midland R. R. Co.* v. *Galey,* 141 Ind. 483, 39 N. E. 940, 40 N. E. 801.)

In cases of railroad grants, the grant attaches only to the land that is public land at the time of the existence of an entry, and even though the same be subsequently canceled or abandoned, the land does not pass under the grant to the railroad. (See *United States* v. *Grand Rapids Co.,* 154 Fed. 131; *Kansas Pac. R. Co.* v. *Dunmeyer,* 113 U. S. 629, 28 L. Ed. 1122, 5 Sup. Ct. Rep. 566; *Bardon* v. *Northern Pac. R. Co.,* 145 U. S. 535, 36 L. Ed. 806, 12 Sup. Ct. Rep. 856; *Whitney* v. *Taylor,* 158 U. S. 85, 39 L. Ed. 906, 15 Sup. Ct. Rep. 796.)

The cases cited from the states by the appellant in this case are all cases where the person first filing has abandoned or relinquished or in some way lost his claim, none of them involving a case where there was a contest and where a preference right of a person in the position of the plaintiff in this case arose, which offers every reason for a distinction between those cases and this one. Appellant contends that the rule for which we contend does not apply to land claimed under the Act of 1875. It will be seen on consideration of the case of *Enid etc. R. R. Co.* v. *Kephart,* 19 Okl. 1, 91 Pac. 1049, that this precise question was passed upon and decided in accordance with our contention.

The statute of limitations applying is the ten year statute. In a recent South Dakota case, *Faulk* v. *Missouri etc. R. Co.,* 28 S. D. 1, Ann. Cas. 1913E, 1130, 132 N. W. 233, the ten year statute is held to apply. In Arkansas it is held that the adverse possession statute applies. (*Oregon* v. *Memphis etc. R. Co.,* 51

Ark. 235, 11 S. W. 96.) In Indiana the plaintiff is given two remedies, and if he selects one it is barred by the adverse possession statute, whereas if he takes the other, it is barred by the statute referring specifically to injury to property or damages for the detention thereof. (*Shortle* v. *Louisville etc. Ry. Co.,* 130 Ind. 505, 30 N. E. 639.) In Massachusetts there is a special statute requiring an action to be brought within one year where land is appropriated for railroad purposes. (*Partridge* v. *Inhabitants of Arlington,* 193 Mass. 530, 79 N. E. 812.) In Michigan the continuing trespass doctrine is adopted. (*Wood* v. *Michigan Air-line R. Co.,* 90 Mich. 212, 51 N. W. 265.) In Minnesota there is a special statute applying to such actions. (*Banse* v. *Clark,* 69 Minn. 53, 71 N. W. 819.) In Mississippi the statute with reference to adverse possession applies. (*Board of Levee Commrs.* v. *Dancy,* 65 Miss. 335, 3 South. 568.) The same rule applies in Missouri and in New Jersey. (*Doyle* v. *Kansas City etc. R. R.,* 113 Mo. 280, 20 S. W. 970; *Lehigh Valley R. R. Co.* v. *McFarlan,* 43 N. J. L. 605.) And in Nebraska it was held that a statute limiting the time was unconstitutional. (*Kime* v. *Cass County,* 71 Neb. 677, 8 Ann. Cas. 853, 99 N. W. 546, 101 N. W. 2.) In New York neither the trespass statute nor the statute with reference to obligations arising out of contract applies. (*Clark* v. *Water Commissioners,* 148 N. Y. 1, 42 N. E. 414.) In Ohio a double remedy is provided as in Indiana, but the statute does not begin to run until an election is made. (*Fries* v. *Wheeling etc. Ry. Co.,* 56 Ohio St. 135, 46 N. E. 516.) In Texas the statute with reference to adverse possession applies. (*Chicago etc. Ry. Co.* v. *Johnson* (Tex. Civ.), 156 S. W. 253.) The state of Iowa applies the adverse possession statute. (*Hartley* v. *Keokuk etc. Ry. Co.,* 85 Iowa, 455, 52 N. W. 352.)

Notwithstanding the *Daneri Case* cited by the appellant, the California cases hold that in a case of a wrongful taking, as was this case, the statute applying is the statute referring to trespass upon real property, and the cases which lay down this

doctrine last referred to are cases of single wrongful acts, and their doctrine is not applicable to a case like the one at bar.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was commenced on May 16, 1912, for the recovery of damages alleged to have resulted to plaintiff from the appropriation and occupation by the defendant of a strip of land 200 feet in width and covering an area of twenty-eight acres, as a right of way for its railroad. The strip is a part of a tract of 160 acres situate in Missoula county, acquired by plaintiff by patent from the United States under a timber and stone entry made in compliance with the provisions of the federal laws applicable. The facts presenting the questions at issue are, briefly stated, as follows:

Prior to April 16, 1906, one Whitmore had filed in the United States land office at Missoula a homestead entry on the land. On that date the plaintiff instituted a contest of this entry, seeking to have it canceled, claiming a prior right to acquire patent. The contest was decided in his favor by the register and receiver on April 28, 1907, and the entry was ordered canceled. After the usual appeals the order became final, and on April 6, 1908, Whitmore relinquished his claim. On the same day the plaintiff tendered his filing, which was accepted, with the result that thereafter, upon the termination of contests instituted by other persons questioning plaintiff's right of entry, patent was issued to him. In the meantime the Chicago, Milwaukee & St. Paul Railway Company of Montana (hereafter referred to as the Montana Company) appropriated and occupied the strip for a right of way, having begun the work of clearing and construction in September, 1906. During the year 1907 (the exact date does not appear) Whitmore executed to the company a quitclaim deed to the strip for a consideration of $1,000. On March 12, 1907, the company filed in the land office at Missoula a map, showing a survey and location of its line, which included the strip in controversy. This was approved by the secretary of the

interior on August 28, 1908. The construction of the roadbed was completed in September, 1907, and the laying of the rails in October, 1908. The defendant became the successor of the Montana Company by purchase on January 1, 1909. It then entered upon and occupied the right of way, and has since continued to do so. The damages for which recovery is sought include the value of the land so appropriated and occupied, and injury to adjoining land resulting from the construction and operation of the railroad. The questions of law arising upon these facts which were stipulated by counsel, the court determined in favor of the plaintiff, and submitted to the jury the question only what amount of damages the plaintiff was entitled to recover. The jury awarded him $1,050, and judgment was entered for this sum and costs. The defendant has appealed from the judgment and an order denying its motion for a new trial.

No contention is made that the court committed any error in the ascertainment of the amount of damages. It is thus conceded that if the defendant is liable at all, the award made by the jury must stand. The theory of the case adopted by the court and counsel for the plaintiff was that the Montana Company did not acquire title by virtue of any of the occurrences prior to April 6, 1908, and hence that by its assumption of possession on January 1, 1909, under its conveyance from the Montana Company, the defendant became a trespasser, and liable to the plaintiff for all the damages it would have been liable for, had it sought to condemn the strip for a right of way in the first instance.

Counsel contends that the judgment should be reversed for three reasons: (1) That plaintiff did not have title at the time the acts complained of occurred; (2) that the defendant had title to the strip under the Act of Congress approved March 3, 1875, either by actual construction of its road, or by the filing of its map of definite location and the subsequent approval of it by the secretary of the interior; (3) that plaintiff's cause of action is barred by the limitation prescribed by subdivision 3 of section

6447 of the Revised Codes. The first two contentions, though stated as distinct propositions, in final analysis present the single inquiry: Did the Montana Company, by virtue of any of the occurrences prior to April 6, 1908, acquire title to the strip now occupied by the defendant? If it did, the plaintiff acquired title under his patent, subject to this prior right; and had this company continued to occupy the strip, it could not have been held liable to the plaintiff in any amount. Neither can defendant be held liable, for it is not questioned that it legally acquired all the rights of the Montana Company.

It will be noted that the date at which plaintiff acquired his patent does not appear. It is fair to assume that he acquired it subsequent to the completion of defendant's road. Whether this is so, however, is not important. Under the rule applicable, his title cannot relate to a date earlier than that of his entry. The [1] Land Department and the supreme court of the United States have always observed the rule that so long as there is an existing entry of record, valid on its face, the land covered by it must be regarded as withdrawn from the public domain; so that another citizen cannot initiate title to it by entry or otherwise. (*In re Cliff*, 3 L. D. 216; *Graham* v. *Hastings & D. R. R. Co.*, 1 L. D. 362; *In re Laird*, 13 L. D. 502; *McMichael* v. *Murphy*, 20 L. D. 147; *Witherspoon* v. *Duncan*, 4 Wall. (71 U. S.) 210, 18 L. Ed. 339; *Hastings & Dak. R. R. Co.* v. *Whitney*, 132 U. S. 357, 33 L. Ed. 363, 10 Sup. Ct. Rep. 112; *Hodges* v. *Colcord*, 193 U. S. 192, 48 L. Ed. 677, 24 Sup. Ct. Rep. 433; *McMichael* v. *Murphy*, 197 U. S. 304, 49 L. Ed. 766, 25 Sup. Ct. Rep. 460.)

In *Hastings & Dak. R. R. Co.* v. *Whitney, supra,* the court, after referring to its former decisions, said: "In the light of these decisions the almost uniform practice of the Department has been to regard land upon which an entry of record, valid upon its face has been made, as appropriated and withdrawn from subsequent homestead entry, pre-emption settlement, sale or grant until the original entry be canceled or declared forfeited, in which case the land reverts to the government as part

of the public domain, and becomes again subject to entry under the land laws.'' The fact that the entry is invalid for any reason does not aid the case of the adverse claimant. Speaking on this subject, the court later in the same case said: ''But these defects, whether they be of form or substance, by no means render the entry absolutely a nullity. So long as it remains a subsisting entry of record, whose legality has been passed upon by the land authorities and their action remains unreversed, it is such an appropriation of the tract as segregates it from the public domain, and therefore precludes it from subsequent grants.''

The underlying principle is that one person cannot initiate title to public land by invading an apparently valid existing right in another to the same land. (*Atherton* v. *Fowler,* 96 U. S. 513, 24 L. Ed. 732.) This rule is entirely in accord with the theory of the statute under which plaintiff established his right of entry. (Act Cong. May 14, 1880, c. 89, 21 U. S. Stats. 140, amended by Act Cong. July 26, 1892, c. 251, 27 U. S. Stats. 270, U. S. Comp. Stats. 1913, secs. 4536–4538.) The statute does not confer any right to the land covered by the canceled entry, but merely the right to acquire the title by making entry as required by the land laws; for, after providing that the register of the local land office shall give notice to the successful contestant of the result of the contest, it declares that he shall be ''allowed thirty days from date of such notice to *enter* said lands.'' The extent of plaintiff's right was therefore a mere preference right of entry—a personal privilege which he might or might not exercise—granted to him in consideration of his conducting the contest of Whitmore's entry to a successful conclusion. (*Graham* v. *Great Falls W. P. & T. Co.,* 30 Mont. 393, 76 Pac. 808.) That his title subsequently acquired by his [2] patent relates to the date of his entry, however, must be conceded. This proposition is not controverted by the defendant.

It has always been the policy of the Congress to encourage the building of railroads in the western states, as is witnessed

[3] by the several grants of land to aid in their construction. To encourage those companies to which it had not made such grants, it enacted the statute invoked by the defendant, providing a means by which they might acquire rights of way over any portion of the public lands by filing in the local land office a map of definite location and securing the approval of the secretary of the interior. Prior to the passage of this Act (Act of March 3, 1875) and on March 3, 1873, Congress had passed another Act (17 U. S. Stats. 602, U. S. Rev. Stats. 2288, U. S. Comp. Stats. 1913, sec. 4535), authorizing any *bona fide* settler to convey "by warranty against his own acts, any portion of his claim for church, cemetery, or school purposes, or for the right of way of railroads," *etc.* This latter Act was amended by the Acts of March 3, 1891, Chapter 561, section 3 (26 U. S. Stats. 1097), and March 3, 1905, Chapter 1424 (33 U. S. Stats. 991), but not in any respect requiring notice here. Theretofore no such conveyance could be made, because the settler had no title, and because he was prohibited from alienating any portion of his claim before final proof. (U. S. Rev. Stats. 2291, U. S. Comp. Stats. 1913, sec. 4532.) From one point of view, this Act may be construed as expressive of an intention by Congress to enable the settler to make a *pro tanto* relinquishment of his claim, without forfeiting his right to patent, leaving the grantee to secure title under other provisions of the land laws, or by direct grant from the government. If this was its purpose, the defendant, by compliance with the Act of March 3, 1875, secured title as of the date at which it filed its map of definite location; for its right was initiated by the filing of the map showing its selection. (*Stalker* v. *Oregon Short Line R. R. Co.*, 225 U. S. 142, 56 L. Ed. 1027, 32 Sup. Ct. Rep. 636.) Under this view, the effect of the relinquishment was to restore the granted land *pro tanto* to the public domain, and at the same time to give the grantee a preference right to acquire it. Another view is that Congress intended by it to constitute the entryman the agent of the United States to convey the title to the grantee, as fully as if he had a patent. That this was perhaps the intention is shown by the fact that

all the purposes to be served by the conveyance are public, or *quasi* public, and it cannot be presumed that Congress overlooked the possibility that the entry of the settler might be canceled after contest or be abandoned, and the grantee left without protection from subsequent claimants.   To illustrate: A grant is made of a small area for a community cemetery.   If the grant is not effective to convey title, the subsequent cancellation or abandonment of the entry would restore the area to the public domain.   The next entryman would be at liberty to respect or desecrate the resting place of the dead of the community, as his whim or caprice might prompt him.   Such also would be the condition of the community school or church.   So a railroad company would be left to his mercy, though it proceeded to construct its line under the justified belief that it had secured its right of way under its conveyance.   The fact that the Act of March 3, 1875, provides for condemnation proceedings in similar cases does not preclude the notion that Congress intended, by the earlier Act to authorize the securing of the title to land for any of the purposes named, by treaty by the parties interested. But be this as it may, we are inclined to the view that the purpose of its enactment was to enable the entryman, for himself and the government, to convey the title.   It is not important, however, which view is adopted.   If Whitmore's grant amounted to nothing more than a relinquishment *pro tanto* of his right, so that the Montana Company could acquire the title from the government, it did so by complying with the Act of March 3, 1875, and also by the construction of its road.   (*Stalker* v. *Oregon Short Line R. R. Co., supra; Jamestown & N. R. R. Co.* v. *Jones,* 177 U. S. 125, 44 L. Ed. 698, 20 Sup. Ct. Rep. 568.) If, on the other hand, Whitmore was, under the circumstances, the authorized agent of the government to convey title, the Montana Company became fully vested with title at the time of the conveyance, and by virtue of it and the entry of plaintiff was made subject to its right.   Either view brings this case within the spirit of the decision in *Minidoka & S. W. R. R. Co.* v. *United States,* 235 U. S. 211, 59 L. Ed. 200, 35 Sup. Ct. Rep.

46, in which, after considering the purpose of the Act and the amendments thereto, in connection with the legislation relating to irrigation districts, the court distinctly recognized the purpose of such conveyance to be to enable railroads to acquire effectively rights of way over lands entered as homesteads, but not yet patented.

Counsel for plaintiff rely with confidence upon the case of *Enid & Anadarko R. R. Co.* v. *Kephart,* 19 Okl. 1, 91 Pac. 1049. That case is distinguishable in its facts from this case, in that the question of the office of a conveyance to the railroad company from an entryman whose entry was *prima facie* valid was not therein involved or considered.    It is not in point.

This disposition of the first two contentions of counsel renders it unnecessary to consider the third.    The judgment and order are reversed, with directions to dismiss the action.

*Reversed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.