## UNITED STATES *v.* BUCHANAN.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLORADO.

No. 589.   Argued December 3, 1913.—Decided January 5, 1914.

The term, " Public lands subject to settlement or entry," does not include lands that have been entered and a certificate of entry obtained therefor, and § 3 of the act of February 25, 1885, c. 149, 23 Stat. 322, does not apply to such lands.

An entry withdraws the land from entry or settlement by another and segregates it from the public domain, and the possessory right acquired by the entryman is in the nature of private property and entitled to protection as such; and interference with the peaceable possession of the entryman is not punishable under a Federal statute applicable only to public lands still subject to entry.

THE Grand Jury for the District of Colorado indicted Buchanan for a violation of the act "to prevent unlawful occupancy of the public land." The indictment charged that in February, 1907, one Edward Scott made a homestead entry, at the proper office, of a quarter-section of land in Colorado, and died, March 28, 1910, leaving the homestead entry in full force and effect; that thereafter "his heirs were in lawful possession of and were engaged in cultivating the said homestead land for the purpose of protecting their right as heirs to the same, until May 9, 1911, when the defendant, Buchanan, wilfully, wickedly, unlawfully and feloniously did prevent and obstruct said heirs from peaceably entering upon and establishing a settlement and residence on the said homesteaded land of the United States subject to settlement and entry under the public land laws." The defendant demurred on the ground that the facts charged did not constitute an offense punishable under § 3 of the act of February 25, 1885, c. 149, 23 Stat. 321, 322, which provides:

"SEC. 3. That no person, by force, threats, intimidation, or by any fencing or inclosing, or any other unlawful means, shall prevent or obstruct, . . . any person from peaceably entering upon or establishing a settlement or residence on any tract of public land subject to settlement or entry under the public land laws of the United States."

The defendant's demurrer was sustained and the Government brought the case here under the Criminal Appeals Act.

*Mr. `Assistant Attorney General Knaebel*, with whom *Mr. S. W. Williams* was on the brief, for the United States:

The third section of the act of February 25, 1885, was intended for the protection of the right of a homestead claimant to continue his settlement and residence throughout the period required by the homestead law, no less than for the protection of his right to initiate settlement and residence; and the ruling of the trial court to the contrary was error. *Buford* v. *Houtz*, 133 U. S. 320; *Cameron* v. *United States*, 148 U. S. 301; *Camfield.* v. *United States*, 167 U. S. 518; *Dickey* v. *Turnpike Co.*, 37 Kentucky, 113; *Golconda Cattle Co.* v. *United States*, 201 Fed. Rep. 281; *Heirs of Stevenson* v. *Cunningham*, 32 L. D. 650; *State* v. *Rogers*, 107 Alabama, 444; *United States* v. *Lacher*, 134 U. S. 624; *United States* v. *Mills*, 190 Fed. Rep. 513; *United States* v. *Perry*, 45, Fed. Rep. 759; see also Revised Statutes, § 2291; Black's Law Dict. 436; Cong. Rec., vol. 15, pt. 5, pp. 4768–4783; Cong. Rec., vol. 16, pt. 1, p. 622; Id., pt. 2, pp. 1456, 1478; Report H. R., No. 1325, 48th Cong., 1st Sess.; Sen. Ex. Doc., No. 127, 48th Cong., 1st Sess.; Sen. Rep., No. 979, 48th Cong., 2d Sess.

*Mr. S. E. Naugle*, with whom *Mr. C. W. Waterman* was on the brief, for defendant in error.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

The statute, under which the defendant was indicted, makes it unlawful to prevent "any person from peaceably entering upon or establishing a settlement or residence on public land, subject to settlement or entry." The indictment charges that the defendant prevented the heirs of the homesteader "from entering upon and establishing a settlement and residence on homesteaded lands of the United States subject to settlement and entry." This difference between the language of the statute—"public land of the United States"—and the charge in the indictment—"homesteaded land of the United States"—raises the question whether, after entry and before patent, land covered by a homestead claim is public land within the meaning of the act "to prevent unlawful occupancy of the public land."

In construing the statute it must be remembered that at the time of its passage in 1885, by tacit consent of the Government, any person could graze sheep and cattle upon any part of the public domain. *Buford* v. *Houtz*, 133 U. S. 320, 326; *Light* v. *United States*, 220 U. S. 523, 535. Many availed themselves of this privilege and the cattle of different owners fed together on the open prairie, no one claiming that thereby any exclusive right had been acquired. The first fences were built only around very small areas. But from this small beginning the practice rapidly grew, until in some cases vast tracts were fenced in by herdsmen who treated the land as though it was their own property. 5 H. R. 1325, 48th Cong. 1st Sess. These unlawful fences not only closed the roads and obstructed the mails, but there were occasions in which citizens were prevented from peaceably taking possession of these enclosed public lands and by settlement thereon securing the right to enter the same at the Register's office.

Under these circumstances Congress passed the act intended to protect the rights of the United States as proprietor, by making unlawful "all inclosures of any public land"; to prevent obstruction of the roads; to create, a method for summary removal of fences; and to provide a punishment for those who prevented others from entering upon or establishing a settlement on public land subject to settlement or entry. But all its provisions related to public lands—not to private lands; to land subject to entry—not to land which had been entered in the Register's office; to land subject to settlement—not to land on which a settlement had already been established. For, as shown by the context, the word "established" did not mean "to fix unalterably" (*Osborne* v. *San Diego Co.*, 178 U. S. 22, 39), but to create or set up the settlement which had to be made prior to entry at the Register's office in the case of a preëmptor and could be so made in the case of a homesteader. Rev. Stat., §§ 2289, 2259, 2263, 2264, act of May 14, 1880; 21 Stat. 140, c. 89, § 3. *Stearns* v. *United States*, 152 Fed. Rep. 900, 902 (10); 4 Op. of Atty. Gen. 493. These provisions refer not to something to be done in the future but to a settlement already completed and require that within thirty days after this finished act, proof of such settlement shall be made. When, on that proof, or compliance with other statutory conditions, entry was made, the Preëmptor or Homesteader was entitled to possession and could protect himself by legal proceedings against intrusion by cattlemen or others.[1]

---

[1] Sec. 2289. Every person who is the head of a family . . . shall be entitled to enter one-quarter section . . . of unappropriated public land. . . .

Sec. 2259. Every person, being the head of a family . . . who has made, or hereafter makes, a settlement in person on the public lands subject to preëmption, and who inhabits and improves the same, and who has erected or shall erect a dwelling thereon, is authorized to

The indictment here charges that, after having entered this quarter-section at the Register's office, Moore remained in possession for three years and that when he died the homestead was in full force and was thereafter maintained by his heirs. This negatives any idea of abandonment. It implies that he not only entered the land at the proper office, but had established a settlement, erected a dwelling, and both acquired and maintained that "inceptive right" which "was the commencement of title." *Chotard* v. *Pope*, 12 Wheat. 586, 588; *Hoofnagle* v. *Anderson*, 7 Wheat. 212.

The land covered by the homestead of Moore was therefore not public land of the United States subject to entry or settlement. For, "in no just sense can land be said to be public lands after they have been entered at the land office and a certificate of entry obtained. If public lands before the entry, after it they are private property." *Wisconsin R. R. Co.* v. *Price County*, 133 U. S. 496, 506; *Svor* v. *Morris*, 227 U. S. 524–528. The entry by Moore withdrew the land from entry or settlement by any other,

enter with the Register of the land office . . . any number of acres not exceeding 160 . . . upon paying to the United States the minimum price of such land.

SEC. 2263. Prior to any entries being made under the provisions of § 2259, proof of the settlement and improvement thereby required shall be made to the satisfaction of the Register. . . .

SEC. 2264. When any person settles or improves a tract of land subject at the time of settlement to private entry, and intends to purchase the same under the preceding provisions of this chapter, he shall, within thirty days after the date of such settlement, file with the register of the proper district a written statement, describing the land settled upon and declaring his intention to claim the same under the preëmption laws; and he shall, moreover, within twelve months after the date of such settlement, make the proof, affidavit, and payment hereinbefore required. If he fails to file such written statement, or to make such affidavit, proof, and payment within the several periods named above, the tract of land so settled and improved shall be subject to the entry of any other purchaser.

and segregated the quarter-section from the public domain. The legal title remained in the Government until patent issued; but as against all except the United States he was the lawful possessor clothed with an inceptive title (*Sturr* v. *Beck*, 133 U. S. 541, 547, 549; *Bunker Hill Co.* v. *United States*, 226 U. S. 548, 550), which entitled him to maintain suits in equity or actions at law to obtain redress for a violation of his possessory rights. *Russian-American Co.* v. *United States*, 199 U. S. 570, 577. The homesteader having thus acquired the right to "treat the land as his own" so far as was necessary to carry out the purposes of the statute (*Shiver* v. *United States*, 159 U. S. 491, 497), it is apparent that this right was in the nature of private property, and entitled to protection as such. Interference with the possession of the homesteader or his heirs living on land thus withdrawn from entry was not punishable under a Federal statute applicable only to public lands subject to entry.

This view is sustained by the terms of the statute and is in accord with the policy to leave the protection of such possessory claims to the laws of the several States. Congress could have legislated so as to make the statute applicable until patent issued. But instead of doing so, it left the homesteader, who had acquired a possessory title, to avail himself of the same rights that were open to others holding lands, by title absolute or inchoate. In both cases there was right of possession, and in both cases wrongs against possession could be redressed. Such seems to have been the practical construction of the statute since its passage, twenty-eight years ago, for we are cited to no case in which a prosecution has been instituted, in a Federal court, against one interfering with the possession of a homesteader after entry and before patent.

*Judgment affirmed.*