# CENTRAL PACIFIC RAILWAY COMPANY *v.* LANE.

---

PUBLIC LANDS; RAILROAD LAND GRANTS; INDEMNITY LAND; INJUNCTION; CONSTITUTIONAL LAW; OFFICERS.

The Central Pacific Railway Company on February 29, 1910, filed a selection list of indemnity lands under the Act of Congress of July 25, 1866. (14 Stat. at L. 239, chap. 242), which list was held for rejec-

tion by the Commissioner of the General Land Office January 16, 1915, upon the sole ground that the land had been included in a water-power site reserve by executive order of November 25, 1911, promulgated under the Act of Congress of June 25, 1910 (36 Stat. at L. 847, chap. 421, Comp. Stat. 1916, § 4523), and the Secretary of the Interior approved the Commissioner's action. In a suit in equity by the railroad company against the Secretary to enjoin him from canceling the selection list, it was *held,* reversing a judgment dismissing the bill, that (1) the right of selection conferred upon the railroad company was a contractual right between the United States and the company; (2) that an interest in the lands selected vested in the plaintiff as of the date of selection, and not as of the date of the approval of the list by the Secretary, of which vested interest the company could not be deprived by the Act of June 25, 1910, or the executive order made thereunder; (3) that no discretionary power of the Secretary was involved, it being his ministerial duty after finding the selection was lawfully made to approve the list and issue a patent to the company for the lands; and (4) that the suit was not one against the United States, as the lands had passed out of the public domain and the right to them had passed to the plaintiff, and the suit was one to compel an officer to perform the duty prescribed by law in recognizing a vested right.

No. 3012. Submitted March 8, 1917. Decided April 23, 1917.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to enjoin the Secretary of the Interior from rejecting and canceling a list of indemnity railroad lands selected by the plaintiff.

*Reversed.*

The COURT in the opinion stated the facts as follows:

This suit was filed in the supreme court of the District of Columbia by appellant, Central Pacific Railway Company, to enjoin Franklin K. Lane, the Secretary of the Interior, and Clay Tallman, the Commissioner of the General Land Office, from rejecting and canceling a list of indemnity railroad lands selected in California.

It appears that the tract of land here in suit, consisting of

90 acres, was selected by plaintiff company February 29, 1910, by list filed in the local land office at Redding, California. The list was certified on March 5, 1910, to the General Land Office, where it remained pending action by the Commissioner until January 16, 1915, when it was held for rejection and cancelation, upon the sole ground that the land in question had been included in a water-power site reserve by executive order on November 25, 1911, and subsequently withdrawn by the Commissioner, which action was thereafter approved by the Secretary of the Interior.

The selection was made by authority of an Act of Congress, approved July 25, 1866 (14 Stat. at L. 239, chap. 242), entitled, "An Act Granting Lands to Aid in the Construction of a Railroad and Telegraph Line from the Central Pacific Railroad, in California, to Portland, in Oregon." Section 2 of the act, among other things, provides: "That there be, and hereby is, granted to the said companies, their successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores over the line of said railroad, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile (ten on each side) of said railroad line." The above is what is known as the grant of primary or place lands, the title to which passed as of the date of the grant. *Van Wyck* v. *Knevals,* 106 U. S. 360, 27 L. ed. 201, 1 Sup. Ct. Rep. 336.

The act further provides that "when any of said alternate sections or parts of sections shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, other lands, designated as aforesaid, shall be selected by said companies in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections designated by odd numbers as aforesaid, nearest to and not more than 10 miles beyond the limits of said first-named alternate sections; and as soon as said companies, or either of them, shall file in the office of the Secretary of the Interior a map of the

survey of said railroad, or any portion thereof, not less than 60 continuous miles from either terminus, the Secretary of the Interior shall withdraw from sale public lands herein granted on each side of said railroad, so far as located and within the limits before specified."

The Act of Congress of June 25, 1910 (36 Stat. at L. 847, chap. 421, Comp. Stat. 1916, § 4523), under which, by executive order, the land in question was sought to be withdrawn for a power site, among other things, provides "that the President may, at any time in his discretion, temporarily withdraw from settlement, location, sale, or entry any of the public lands of the United States including the District of Alaska and reserve the same for water-power sites, irrigation, classification of lands, or other public purposes to be specified in the orders of withdrawals, and such withdrawals or reservations shall remain in force until revoked by him or by an act of Congress." · The act specifically excludes from its operation "any oil or gas-bearing lands after any withdrawal of such lands made prior to the passage of this act, and  *  *  *  all lands which are, on the date of such withdrawal, embraced in any lawful homestead or desert-land entry theretofore made, or upon which any valid settlement has been made and is at said date being maintained and perfected pursuant to law."

It is averred by plaintiff company in its bill that the "lands so sought in indemnity selection by it are parts of an odd-numbered section within the limits of the indemnity grant so contained in said Act of July 25, 1866, supra; and that, at the date of filing said list of selections in the local land office, as aforesaid, the same were vacant, unoccupied, unappropriated lands, nonmineral in character, and free and clear of and from the claim of any person whomsoever, and were not embraced in any reservation theretofore made either by the President of the United States, by Congress, or by any of the Executive Departments of the government of the United States; and the tracts aforesaid were and are needed by plaintiff in partial satisfaction of the grant aforesaid."

This averment is admitted by defendants in the motion to

dismiss the bill, but they aver, in justification of their attempted rejection and cancelation of the selection, "that under existing law no right to land within the indemnity limits of its grant vests in the plaintiff under any selection thereof made by it under the authority of any act of Congress, until such selection has been duly approved by the Secretary of the Interior; and that as to the land selected by the plaintiff as set forth in the bill herein filed, the Secretary of the Interior by operation of the executive order duly made by the President of the United States, withdrawing said land from settlement, location, sale, or entry, is and since November 25, 1911, has been, without any authority to approve the selection list filed by the plaintiff in so far as it includes the land described in the bill aforesaid." It is pointed out in the motion that lands embraced in railroad indemnity lists are not excluded from the provisions of the Power-Site Act.

*Mr. A. A. Hoehling, Jr., Mr. Stanton C. Peelle,* and *Mr. C. F. R. Ogilby,* for the appellant:

1. A statutory contract was effected by the Act of July 25, 1866 (14 Stat. 239). *Burke* v. *Southern P. R. Co.* 234 U. S. 669, 680; *Oregon & C. R. Co.* v. *United States,* 238 U. S. 393, 394; *Weyerhaeuser* v. *Hoyt,* 219 U. S. 380, 387.

2. The rights of a railroad grantee as to any specific tract attach (a) as to primary or place lands, upon the filing of map of definite location; and (b) as to indemnity lands, upon selection. (a) As to primary or place lands, see *Kansas P. R. Co.* v. *Dunmeyer,* 113 U. S. 629, 634, 635; *Van Wyck* v. *Knevals,* 106 U. S. 360, 366; (b) as to indemnity lands, see Administrative Ruling, July 15, 1914; *Re Atlantic & P. R. Co.* 6 L. D. 84, 92, 93; *Barney* v. *Winona & St. P. R. Co.* 117 U. S. 228, 232; *Cedar Rapids, etc., R. R. Co.* v. *Herring,* 110 U. S. 27, 38; Departmental Circular, September 6, 1889 (6 L. D. 131–3); *Dinwiddie* v. *Florida R. etc. Co.* 9 L. D. 74; *Ferguson* v. *Northern P. R. Co.* 37 L. D. 260, 262; *Hewitt* v. *Schultz,* 180 U. S. 139, 157; *Kansas P. R. Co.* v. *Atchison, etc. R. R. Co.* 112

U. S. 414; *Missouri, K. & T. R. Co.* v. *Beal,* 10 L. D. 504; *Re Northern P. R. Co.* 15 L. D. 8; *Ryan* v. *Central P. R. Co.* 99 U. S. 382, 386; *Re Santa Fe P. R. Co.* 33 L. D. 161, 162; *Re Southern P. R. Co.* 32 L. D. 51, 53, 54; *Southern P. R. Co.* v. *Bell,* 183 U. S. 675, 682, 689, 690; *St. Paul, etc. R. R. Co.* v. *Northern P. R. Co.* 139 U. S. 1, 19; *United States* v. *Montana, etc. Co.* 196 U. S. 573; *United States* v. *Southern P. R. Co.* 223 U. S. 565, 570; *Weyerhaeuser* v. *Hoyt, supra.*

3. The rights of the railroad grantee having lawfully attached to the tracts here in suit, no power or authority is vested in the Secretary of the Interior to devote such lands to other purposes foreign to and in hostility with the grant thereof made by Congress. *Barney* v. *Winona, etc. R. Co.* 117 U. S. 228, 232; *Clark* v. *Herington,* 186 U. S. 206, 209; *Daniels* v. *Wagner,* 205 Fed. 235; *Daniels* v. *Wagner,* 237 U. S. 547, 557, 558; *Ferguson* v. *Northern P. R. Co. supra; Grinnel* v. *R. R. Co.* 103 U. S. 739, 742; *Hewitt* v. *Schultz,* 180 U. S. 139; *Kansas P. R. Co.* v. *Atchison, etc. R. R.* 112 U. S. 414, 421; *New Orleans P. R. Co.* v. *Parker,* 143 U. S. 42, 57, 58; 25 Ops. Atty. Gen. p. 632; *Oregon & C. R. Co.* v. *United States,* 189 U. S. 103, 113; *Ryan* v. *Central P. R. Co. supra; Sioux City, etc. R. R.* v. *Chicago, etc. R. R.* 117 U. S. 406, 408; *Sjoli* v. *Dreschel,* 199 U. S. 564, 568, 569; *St. Paul, etc. R. R.* v. *Winona, etc. R. R.* 112 U. S. 720, 733; *United States* v. *Missouri, etc. R. Co.* 141 U. S. 358, 374, 375; *Weyerhaeuser* v. *Hoyt, supra; Wisconsin C. R. R.* v. *Price County,* 133 U. S. 496, 511, 512.

4. Congress cannot lawfully deprive the railroad grantee of any part of its indemnity grant where the rights of such grantee have attached by lawful selection. *Buxton* v. *Traver,* 130 U. S. 232, 236; *Campbell* v. *Wade,* 132 U. S. 34, 38; *Cornelius* v. *Kessel,* 128 U. S. 456, 460, 461; *Daniels* v. *Wagner, supra; Dartmouth College Case,* 4 Wheat. 518; *Frisbie* v. *Whitney,* 9 Wall. 187; *Northern P. R. R.* v. *Smith,* 171 U. S. 260, 268, 269; *Shepley* v. *Cowan,* 91 U. S. 330, 338; *Shiver* v. *United States,* 159 U. S. 491, 495; *Sinking Fund Cases,* 99 U. S. 700, 718, 719; *Whitney* v. *Taylor,* 158 U. S. 85, 95; *Wilcox* v. *Jackson,* 13 Pet. 498, 513; *Yosemite Valley Case,* 15 Wall. 77, 87.

5. Congress has enacted no legislation in any way impairing the property right of appellant in the lands in suit, and the act approved June 25, 1910 (36 Stat. at L. 847), commonly referred to as the Pickett Act, has no application to the instant case.  Administrative Ruling, July 15, 1914, *supra; Barden* v. *Northern P. R. Co.* 145 U. S. 538, 543; *Bissell* v. *Penrose,* 8 How. 317; *Doolan* v. *Carr,* 125 U. S. 618; *Lake Superior, &c., Co.* v. *Cunningham,* 155 U. S. 354, 373; *Newhall* v. *Sanger,* 92 U. S. 761; *Osborn* v. *Froyseth,* 216 U. S. 571; *Reynolds* v. *Iron Silver Min. Co.* 116 U. S. 687; *Santa Fe Pacific R. R. Co.* 33 L. D. 161; *Southern Pacific R. R. Co.* 32 L. D. 51, 53; *Steel* v. *Smelting Co.* 106 U. S. 447; *Stoddard* v. *Chambers,* 2 How. 284; *United States* v. *Buchanan,* 232 U. S. 72, 76; *Wilcox* v. *Jackson, supra; Wright* v. *Roseberry,* 121 U. S. 488.

6. The attempted inclusion of the tracts here in suit in a power-site reserve, created subsequent to the indemnity selection thereof by appellant, should be treated as a mere nullity, and respondents should be enjoined from enforcing their unwarranted action complained of herein, in order that appellant's property rights may be preserved and secured to it.   *Ballenger* v. *Frost,* 216 U. S. 240, 249; *Burfenning* v. *Chicago, &c., R. Co.* 163 U. S. 321, 323; *Cornelius* v. *Kessel, supra; Doolan* v. *Carr,* 125 U. S. 618, 624; *Garfield* v. *Goldsby,* 211 U. S. 249, 262; *Lake Superior, &c., Co.* v. *Cunningham, supra; Lyttle* v. *Arkansas,* 9 How. 314; *Simmons* v. *Wagner,* 101 U. S. 260; *Smelting Co.* v. *Kemp,* 104 U. S. 636, 641; *St. Paul &c. R. R. Co.* v. *Winona & C. R. R. Co. supra; Worth* v. *Branson,* 98 U. S. 118.

*Mr. Charles D. Mahaffie* and *Mr. C. Edward Wright,* for the appellees:

1. There is no "selection" in law or fact which vests a right or title against the United States until the approval of the selection list by the Secretary.   Until that time, the United States may reserve or devote the land to any public use or purpose it pleases.   But if the Secretary approves the selection, that act

relates back to the "initiatory right," which is a right that cuts off all adverse third-party claimants whose rights were initiated after the filing of the selection. *Chotard* v. *Pope*, 12 Wheat. 586; *Rector* v. *Ashley*, 6 Wall. 142; *Frisbie* v. *Whitney*, 9 Wall. 187; *Gibson* v. *Chouteau*, 13 Wall. 92; *Yosemite Valley Case*, 15 Wall. 77; *Shepley* v. *Cowan*, 91 U. S. 330; *Ryan* v. *R. R. Co.* 99 U. S. 382; *Kansas Pacific R.* v. *Atchison, &c. R.* 112 U. S. 414; *St. Paul & Sioux City R.* v. *Winona, &c. R. Co.* 112 U. S. 720; *Barney* v. *Winona, &c. R.* 117 U. S. 228; *Sioux City & St. P. R. Co.* v. *Chicago, M. & P. R. Co.* 117 U. S. 406; *Bultz* v. *Northern P. R. Co.* 119 U. S. 72; *Wisconsin C. R. Co.* v. *Price Co.* 133 U. S. 496; *St. Paul & P. R. Co.* v. *Northern P. R. Co.* 139 U. S. 1; *United States* v. *M., K. & T. R. Co.* 141 U. S. 358; *N. O. P. R. Co.* v. *Parker*, 143 U. S. 42; *Whitney* v. *Taylor*, 158 U. S. 85; *Wisconsin C. R. Co.* v. *Forsythe*, 159 U. S. 46; *Shiver* v. *United States*, 159 U. S. 491; *Gonzales* v. *French*, 164 U. S. 338; *Northern P. R. Co.* v. *Colburn*, 164 U. S. 383; *United States* v. *Oregon & C. R. Co.* 176 U. S. 28; *Hewitt* v. *Schultz*, 180 U. S. 139; *Southern P. R. Co.* v. *Bell*, 183 U. S. 675; *Clark* v. *Herrington*, 186 U. S. 206; *Oregon & C. R. Co.* v. *United States*, 189 U. S. 103; *Cosmos* v. *Grey Eagle Co.* 190 U. S. 301; *Sjoli* v. *Dreschel*, 199 U. S. 564; *Russian Am. P. Co.* v. *United States*, 199 U. S. 570; *Union P. R. Co.* v. *Harris*, 215 U. S. 386; *Weyerhauser* v. *Hoyt*, 219 U. S. 380; *United States* v. *Southern P. R. Co.* 223 U. S. 565; *Stalker* v. *Oregon S. Line*, 225 U. S. 142; *Daniels* v. *Wagner*, 237 U. S. 547.

2. In this case the Secretary had no jurisdiction or discretion to grant the appellant's demand. The President had withdrawn the land under the authority of an act of Congress. The Secretary has no choice. If he approves the list, his act will be in vain for lack of jurisdiction, or, if efficient, his act will be one of disobedience to his superior and in derogation of the will of Congress. The Secretary of the Interior is certainly without authority to override or disregard the President's act. The Act of 1910 specifically authorized the President to withdraw land for power-site purpose.

3. The attempt is to interfere with what the United States, acting through its duly constituted officers, shall do with what it claims is its own property. Personally, Franklin K. Lane and Clay Tallman have no more interest in the land involved than any other citizen of the United States. As Secretary of the Interior Mr. Lane has only the official duty of holding this land for the government to the end that it may be available for the carrying out of the public purpose for which it has been withdrawn. He is but the caretaker. The United States is the real defendant. He is holding this land under an act of Congress through an executive order for a public purpose. He did not make that order. No act of his is involved in this case save an act of obedience. The United States, whose agent he is, is claiming this land as its own and has devoted it to a certain public purpose. The effect of granting the decree sought transfers the title to the appellant and deprives the United States of its use of the land for the purpose designated and intended by the withdrawal. See *Minnesota* v. *Hitchcock,* 185 U. S. 373; *Oregon* v. *Hitchcock,* 202 U. S. 60; *Louisiana* v. *Garfield,* 211 U. S. 70.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The right of selection conferred upon the railroad company is a contractual right created by the act of Congress between the United States and the company. Considering the nature of the statutory contract thus created, the court, in the case of *Burke* v. *Southern P. R. Co.* 234 U. S. 669, 680, 58 L. ed. 1527, 1544, 34 Sup. Ct. Rep. 907, speaking through Mr. Justice Van Devanter, said: "Instead of giving a gratuitous reward for something already done, the act made a proposal to the company to the effect that if the latter would locate, construct, and put into operation a designated line of railroad, patents would be issued to the company confirming in it the right and title to the public lands falling within the descriptive terms of the grant. The purpose was to bring about the construction of the road, with the resulting advantages to the government and the public,

and to that end provision was made for compensating the company, if it should do the work, by patenting to it the lands indicated. The company was at liberty to accept or reject the proposal. It accepted in the mode contemplated by the act, and thereby the parties were brought into such contractual relations that the terms of the proposal became obligatory on both. *Menotti* v. *Dillon,* 167 U. S. 703, 721, 42 L. ed. 333, 339, 17 Sup. Ct. Rep. 945. And when, by constructing the road and putting it in operation, the company performed its part of the contract, it became entitled to performance by the government. In other words, it earned the right to the lands described."

It will be observed that the act of Congress under which the land in question was withdrawn as a power site was enacted and withdrawal made after selection by plaintiff company but while the list was awaiting approval by the Secretary of the Interior. The principal question presented, therefore, is, When does a vested interest in the railroad company attach to indemnity lands,—at the date of selection or at the date of approval? This question has been before the Supreme Court of the United States in many cases. *Ryan* v. *Central P. R. Co.* 99 U. S. 382, 25 L. ed. 305; *Grinnell* v. *Chicago, R. I. & P. R. Co.* 103 U. S. 739, 26 L. ed. 456; *Kansas P. R. Co.* v. *Atchison, T. & S. F. R. Co.* 112 U. S. 414, 28 L. ed. 794, 5 Sup. Ct Rep. 208; *St. Paul & S. C. R. Co.* v. *Winona & St. P. R. Co.* 112 U. S. 720, 28 L. ed. 872, 5 Sup. Ct. Rep. 334; *Barney* v. *Winona & St. P. R. Co.* 117 U. S. 228, 29 L. ed. 858, 6 Sup. Ct. Rep. 654; *Sioux City & St. P. R. Co.* v. *Chicago, M. & St. P. R. Co.* 117 U. S. 406, 29 L. ed. 928, 6 Sup. Ct. Rep. 790; *Wisconsin C. R. Co.* v. *Price County,* 133 U. S. 496, 33 L. ed. 687, 10 Sup. Ct. Rep. 341; *United States* v. *Missouri, K. & T. R. Co.* 141 U. S. 358, 35 L. ed. 766, 12 Sup. Ct. Rep. 13; *New Orleans P. R. Co.* v. *Parker,* 143 U. S. 42, 36 L. ed. 66, 12 Sup. Ct. Rep. 364; *Hewitt* v. *Schultz,* 180 U. S. 139, 45 L. ed. 463, 21 Sup. Ct. Rep. 309; *Clark* v. *Herington,* 186 U. S. 206, 46 L. ed. 1128, 22 Sup. Ct. Rep. 872; *Oregon & C. R. Co.* v. *United States,* 189 U. S. 103, 47 L. ed. 726, 23 Sup. Ct. Rep. 615.

An examination of the above cases discloses considerable un-

certainty as to the exact date when the right of a railroad company attaches under an indemnity selection. In referring to the date, the court, in some instances, uses the term "selection;" in others, "selection under direction of the Secretary of the Interior," and in others, "selection with the approval of the Secretary of the Interior." A careful analysis of these decisions, however, discloses an agreement of opinion that the controlling date from which the prior rights of contesting claimants attach is the date of selection. Of course, that these selections should be made "under the direction" or "with the approval" of the Secretary is important for the protection of the government. After a selection list has been filed, it remains for the Secretary, in his general supervisory capacity over the disposal of the public lands, to investigate and determine whether the lands are subject to selection under the act, and whether the company is entitled to make a selection. But this investigation and approval have nothing to do with fixing the date when the railroad company's interest vests, any more than in the case of a homestead entryman whose interest vests from the date of making final proof and receiving his final certificate from the officials of the local land office. The duty still remains in the Secretary of examining into the question of whether or not the homesteader has complied in good faith with the requirements of the law; but when it is found that he has, nothing remains for the Secretary but the ministerial act of issuing a patent, which evidence of title relates back to the date of the final certificate.

Indeed, this power of direction or approval by the Secretary of the Interior in the railroad land grants would have existed without any statement to that effect in the acts of Congress. "It may be laid down as a general rule that, in the absence of some specific provision to the contrary in respect to any particular grant of public land, its administration falls wholly and absolutely within the jurisdiction of the Commissioner of the General Land Office, under the supervision of the Secretary of the Interior. It is not necessary that with each grant there shall go a direction that its administration shall be under the authority of the Land Department. It falls there unless there is express

direction to the contrary." *Catholic Bishop* v. *Gibbon,* 158 U. S. 155, 167, 39 L. ed. 931, 936, 15 Sup. Ct. Rep. 779.

The learned justice below turned this case upon the decision in *Sjoli* v. *Dreschel,* 199 U. S. 564, 50 L. ed. 311, 26 Sup. Ct. Rep. 154. In that case the court, speaking through Mr. Justice Harlan, said: "That no rights to lands within indemnity limits will attach in favor of the railroad company until after selections made by it with the approval of the Secretary of the Interior; that up to the time such approval is given, lands within indemnity limits, although embraced by the company's list of selections, are subject to be disposed of by the United States or to be settled upon and occupied under the pre-emption and homestead laws of the United States; and that the Secretary of the Interior has no authority to withdraw from sale or settlement lands that are within indemnity limits which have not been previously selected, with his approval, to supply deficiencies within the place limits within the company's road."

This language seems on first impression to be conclusive of the point under consideration, and seems to have so affected the rule of procedure established in the Land Department that the Secretary called upon the Attorney General for an opinion as to the application of the decision. The Attorney General (25 Ops. Atty. Gen. 632) directed that the decision should be applied only to cases where the facts were similar to those in the *Sjoli Case.* This brings us to the facts in the case. Sjoli settled, erected buildings, and moved his family onto the land in 1884. In 1889 he applied to the local land office to make entry of the land under the Homestead Laws. The application was rejected because the land was then erroneously supposed to be within the granted limits of the St. Paul, Minneapolis, & Manitoba Railroad Company. Sjoli, still residing upon the land, in 1895, "relying," as stated in the opinion, "upon his settlement in 1884," again applied to enter the land under the Homestead Act, and was accepted. Thereafter he made final proof, and in due course a patent was issued to him. In 1885, one year after settlement by Sjoli, the railroad company included this land in an otherwise valid indemnity selection. Thereafter

it sold the land to Dreschel, who brought the suit. On this state of facts, light is thrown upon the .decision. Sjoli was a settler on the land at the date the railroad company filed its selection, a settlement which was never abandoned. He had acquired a prior right over the railroad company. His right to make a homestead entry of the land, and by compliance with the requirements of the Homestead Laws have the inchoate title initiated by settlement ripen into a valid title, dated from the time of settlement, a year before the railroad company made its selection. The decision is, therefore, in accord with both former and subsequent decisions that a settler on indemnity railroad lands at the date of selection by the railroad company has the prior right. The language used in the decision as to the date when a vested interest attaches was unnecessary to a determination of the case.

The question here involved of the exact date on which the interest of a railroad company vests in lands embraced in a valid indemnity selection was for the first time squarely decided in the case of *Weyerhaeuser* v. *Hoyt,* 219 U. S. 380, 55 L. ed. 258, 31 Sup. Ct. Rep. 300. The court, speaking through Mr. Chief Justice White, said: "It is beyond dispute on the face of the granting Act of July 2, 1864, chap. 217, 13 Stat. at L. 365, 367, and of the joint resolution of May 31, 1870, chap. 67, 16 Stat. at L. 378, extending the indemnity limits, that it was the purpose of Congress in making the grant to confer a substantial right to land within the indemnity limits in lieu of lands lost within the place limits. * * * The right to select within indemnity limits was conferred to replace lands granted in place which were lost to the railroad company because removed from the operation of the grant of lands in place by reason of the existence of the rights of others originating before the definite location of the road. The right to select within indemnity limits excluded lands to which rights of others had attached before the selection, and hence simply required that the selection when made should not include lands which at that time were subject to the rights of others. The requirement of approval by the Secretary consequently imposed on that official

the duty of determining whether the selections were lawful at the time they were made, which is inconsistent with the theory that anyone could appropriate the selected land pending action by the Secretary."

The facts there were that the Northern Pacific Railroad Company filed an indemnity selection list covering the land in suit, which was erroneously canceled by order of the Secretary of the Interior. Thereafter one Jones applied to purchase the land under the Timber and Stone Act, made final proof, paid the purchase price, and received a receipt from the local land office. The error in canceling the selection list was occasioned by a misapprehension of the Secretary as to the location of the eastern terminus of the Northern Pacific Railroad, which was finally determined in *Doherty* v. *Northern P. R. Co.* 177 U. S. 421, 44 L. ed. 830, 20 Sup. Ct. Rep. 677. Following this decision the Secretary canceled the entry of Jones, reinstated the lists of selection previously filed, and patented the lands to the railroad company. The railroad company conveyed the land to Weyerhaeuser, and Jones conveyed his interest to Hoyt. Hoyt began suit on the ground that Weyerhaeuser held the title in trust for him. The circuit court of appeals for the eighth circuit sustained Hoyt's contention upon the authority of the decision in the *Sjoli Case.*

The decisions in the *Sjoli* and *Weyerhaeuser Cases* seem at first blush to be in direct conflict,—the former decision holding that the right of the railroad company attaches under a valid indemnity selection at the date of approval by the Secretary of the Interior, the latter decision that it attaches on the date of filing the selection list. This apparent conflict is conclusively disposed of in the Weyerhaeuser decision, here the chief justice reviews the cases prior to the Sjoli decision, and, after stating the facts in that case, concludes as follows: "What we have already said as to the *Sjoli Case* would suffice to dispose of the suggestion concerning that case, but we shall recur to it. As to the other cases, it would be adequate to say that not one of them involved the question here under consideration, nor even by way of *obiter* was an opinion expressed on such question.

Indeed, all the cases relied upon may be placed in one of three classes: (a) Those involving the nature and character of the right, if any, to indemnity lands prior to selection; (b) whether such lands, after the filing of a list of selections and before action by the Secretary of the Interior thereon, could be taxed by a State to the railroad company as the owner thereof; and (c) those which were concerned with the nature and character of acts which were adequate to initiate a right to public land which would be paramount to a list of selections when the acts were done before the filing of the list of selections. In none of the cases, moreover, was the well-settled doctrine of this court as to relation, even by remote implication, questioned. Indeed, in most of the cases relied upon, the previous decisions to which we have referred expounding the doctrine of relation, were approvingly cited or expressly reaffirmed. The *Sjoli Case,* from the facts we have already stated, is clearly here inapplicable, because it falls in the third of the above classes. If it be conceded that general language was used in the opinion in that case which, when separated from its context and disassociated from the issues which the case involved, might be considered as here controlling, that result could not be accomplished without a violation of the fundamental rule announced in *Cohen* v. *Virginia,* 6 Wheat. 399, 5 L. ed. 290, so often since reiterated and expounded by this court, to the effect that 'general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.' The wisdom of the rule finds apt illustration here when it is considered that not even an intimation was conveyed in the *Sjoli Case* of any intention to overrule the repeated prior decisions of this court concerning the operation and effect of the doctrine of relation upon the approval, by the Secretary of the Interior, of a lawful list of selections. That the general expressions in the *Sjoli Case* are not persuasive here clearly results from the demonstration which we have previously made

that to apply them would be in effect to destroy the indemnity provisions of the granting act."

The contention that we are without jurisdiction in this case to control the action of the Secretary by injunction is without merit. The discretionary power of the Secretary is not involved. The indemnity list is conceded to be in regular form and to contain land lawfully subject to selection by the railroad company on the date the list was filed in the land office. Rejection and cancelation of the selection list have been ordered because subsequent to selection the land was attempted to be withdrawn by executive order for a water-power site. This selection being in every respect lawful, the act of Congress conferred upon the railway company the right to make it, and upon the Secretary the duty of approving it, and accordingly issuing a patent therefor. His discretion ceased with the finding that the selection had been lawfully made. All further duties were merely ministerial, and the situation could not be changed by invoking the aid of the intervening Power-Site Act and executive order. The rights of the railroad company had become vested by operation of law, and could not be devested without due compensation either by an act of Congress or by an executive order.

To hold that discretionary power exists in the Secretary to reject or cancel a selection list of indemnity lands conceded by him to have been valid at the date of filing the list in the land office would be equivalent to vesting him with power to disregard an express mandate of Congress. Congress has provided in different ways for the disposition of the public lands, and to hold that when strict compliance has been made with the requirements of the law, the Secretary still has discretion to deny rights acquired thereunder, would be equivalent to endowing him with the power to disregard the law and devest the citizen of rights expressly conferred by law.

In the case of *Daniels* v. *Wagner,* 237 U. S. 547, 59 L. ed. 1102, L.R.A.1916A, 1116, 35 Sup. Ct. Rep. 740, Ann. Cas. 1917A, 40, where a lieu-land application, in every respect in compliance with the law, was made, and, while pending approval by the Secretary, other entries were permitted to be made, the

question of the discretionary power of the Secretary of the Interior in public land matters was exhaustively considered.   Since the situation there in respect of discretionary power was on all fours with the present case, we feel justified in quoting at some length from the opinion of Chief Justice White as follows: "This brings us to determine whether the Land Department had a right to reject a prior lieu-land entry or entries and award the land to subsequent and subordinate applicants under the assumption that it possessed a discretionary right to do so, an authority the possession of which was sustained by both the courts below. In primarily testing the proposition from the point of view of principle it is well at once to exactly fix its true import.   In doing so it is to be conceded (a) that the act of Congress gave the right to one whose land had come to be included by operation of law in a forest or other reservation to apply to the Land Office and obtain the right to enter an equal amount of public land upon the surrender to the United States of the land situated in the reservation and upon the doing and offering to do everything required by the law or the lawful regulations of the Land Department to be done or offered to be done for that purpose; (b) that in the particular case the application to enter the lieu land came within the grant of the statute, and all that was required by law or lawful regulation was done by the applicant in order to obtain entry, and (c) that it was the plain duty of the proper authorities of the Department on the filing of the entry in due course under the law to grant it.   When these conclusions are accepted, it results that the claim of discretionary power is substantially this: That in a case where under an act of Congress a right is conferred to make an application to enter public land and a duty imposed upon the Department to permit the entry, the Department is authorized in its discretion to refuse to allow that to be done which is commanded to be done, and thus deprive the individual of the right which the law gives him.   And it becomes moreover certain that the necessary result of this assertion is the following: That although Congress may have the power to provide for the disposition of the public domain and fix the terms and conditions upon which the

people may enjoy the right to purchase, it has not done so, since every command which it has expressed on this subject may be disregarded and every right which it has conferred on the citizen may be taken away by an unlimited and undefined discretion which is vested by law in the administrative officers appointed for the purpose of giving effect to the law. When the true character of the proposition is thus fixed, it becomes unnecessary to go further to demonstrate its want of foundation."

It follows from a review of the decisions, and especially of the *Weyerhaeuser* and *Daniels Cases,* that the right of a railroad company under an indemnity selection is to be determined from the status of the land at the date of selection, and where, as in this case, the selection is in all respects lawful at the time it is made, the right of the company attaches as of that date. The language used in the granting acts—"under the direction of" or "with the approval of" the Secretary of the Interior— merely relates to the general supervisory power of the Secretary to determine whether the selections were lawfully made and, if so, to approve and issue a patent for the lands selected. The discretion of the Secretary being limited to a determination of the right of the railroad company to make a selection and whether or not the land selected meets the requirements of the granting act, is follows, when the selection is found to be in all respects within the provisions of the act, discretion at that moment ceases, and nothing remains for the Secretary but the ministerial duty imposed by the conditions of the act of approving for patent.

It is vigorously urged by counsel for the government that since patent had not passed from the United States to plaintiff railroad company for the land in question, title still remained in the government, and it was within the power of Congress to withdraw the land, and thus destroy plaintiff's claim. It is undoubtedly true that Congress may do with the public lands as it deems proper. It may withdraw from settlement, grant, or purchase any portion of it, so long as it remains public domain, and adverse rights have not vested. But it by no means follows that this right of withdrawal continues until title passes

by issue of a patent. It continues until the purchaser or grantee, as in this instance, complies with all the required prerequisites which would entitle him to a patent. When that is done, a property right is vested which the government itself cannot take away without making due compensation. As was said in *Campbell* v. *Wade,* 132 U. S. 34, 38, 33 L. ed. 240, 242, 10 Sup. Ct. Rep. 9: "In the present case, before the act withdrawing the lands from sale, which was equivalent to a repeal of the act authorizing the sale, could be held to impair any vested right of the applicant, he must have done everything required by law to secure such right. Until then no contract could arise in any way binding upon the State. No contract rights of the petitioner were therefore violated by its legislation."

As we have endeavored to point out, the railroad company has performed every duty imposed upon it by law, leaving in the Secretary only the ministerial duty of approving the selection list and issuing a patent. By the act of Congress plaintiff company was granted a substantial right in these indemnity lands. It was a grant of power under certain prescribed conditions to make selection of lands to reimburse it for place lands lost by settlement or otherwise prior to the grant. The right to exercise this power of selection exists from the date of the survey of the indemnity land. When the power was lawfully exercised, as in this instance, the company had complied with all the prerequisites essential to establish its right. A contract then existed, the obligations of which could not be impaired even by Congress itself. "The United States cannot, any more than a State, interfere with private rights, except for legitimate governmental purposes. They are not included under the constitutional prohibition which prevents States from passing laws impairing the obligation of contracts, but equally with the States they are prohibited from depriving persons or corporations of property without due process of law. They cannot legislate back to themselves, without making compensation, the lands they have given this corporation to aid in the construction of its railroad. Neither can they by legis-

lation compel the corporation to discharge its obligations in respect to the subsidy bonds otherwise than according to the terms of the contract already made in that connection. The United States are as much bound by their contracts as are individuals. If they repudiate their obligations, it is as much repudiation, with all the wrong and reproach that term implies, as it would be if the repudiator had been a State or a municipality or a citizen. No change can be made in the title created by the grant of the lands, or in the contract for the subsidy bonds, without the consent of the corporation. All this is indisputable." *Sinking Fund Cases,* 99 U. S. 700, 718, 25 L. ed. 496, 501.

Though the right of plaintiff company, as we have shown, rests upon a statutory contract, the same rule is applicable as in the case of a purchaser of public lands under an act of Congress providing the terms upon which they can be disposed of to settlers by the Land Department. The supervisory power of the Secretary only extends to ascertaining whether or not there has been a full compliance with the law. When that is found, or conceded, as here, his supervisory power ceases, and the right of the settler vests. No greater power exists in Congress to interfere with contract rights thus established. "The power of regulation and disposition, conferred upon Congress by the Constitution, only ceases when all the preliminary acts prescribed by those laws for the acquisition of the title, including the payment of the purchase price of the land, have been performed by the settler. When these prerequisites have been complied with, the settler for the first time acquires a vested interest in the premises occupied by him, of which he cannot be subsequently deprived. He is then entitled to a certificate of entry from the local land officers, and ultimately to a patent for the land from the United States." *Yosemile Valley Case* (*Hutchings* v. *Low*) 15 Wall. 77, 87, 21 L. ed. 82, 85.

It will hardly be contended that a railroad company under a land grant act acquires a property right inferior to that of an entryman upon the public domain. The railroad company in this instance contracted not only to construct its road, but

entered into a continuing obligation to furnish free transportation of government property and troops. It stands in the legal status of a purchaser who, by payment of the purchase price, acquires an interest of which he cannot be devested even by the government, without due compensation.

Nor is there merit in the suggestion that this is a suit against the United States, and the court is, therefore, without jurisdiction. The term "public lands," as used in our legislation, describes lands subject to sale or other disposition under general laws. *Newhall* v. *Sanger,* 92 U. S. 761, 23 L. ed. 769; *Bardon* v. *Northern P. R. Co.* 145 U. S. 535, 36 L. ed. 806, 12 Sup. Ct. Rep. 856; *United States* v. *Buchanan,* 232 U. S. 72, 76, 58 L. ed. 511, 514, 34 Sup. Ct. Rep. 237. It logically follows that when lands have passed out of the public domain and become vested in an individual or corporation, they are no longer property of the United States. An action, then, to compel the officers of the government to perform the duty prescribed by law in recognizing the rights so vested, is neither an action against the United States, nor an action affecting property belonging to the United States. It will not do to say that the injunction will have the effect of nullifying an executive order. If the order was made without lawful authority, it was a mere nullity and entitled to no consideration as against rights already vested. The proper remedy in such cases is by injunction. *Lane* v. *Watts,* 234 U. S. 525, 540, 58 L. ed. 1440, 1456, 34 Sup. Ct. Rep. 965.

The action here is to prevent an abuse of discretion by the Secretary growing out of a misapprehension of his duty under the law. "But the power of supervision and correction is not an unlimited or an arbitrary power. It can be exerted only when the entry was made upon false testimony, or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property and a right to a patent therefor, and can no more be deprived of it by order of the Commissioner than he can be deprived by such order of any other lawfully acquired property.

Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it." *Cornelius* v. *Kessel,* 128 U. S. 456, 460, 32 L. ed. 482, 483, 9 Sup. Ct. Rep. 122.

The rule was even more positively stated in *Ballinger* v. *United States,* 218 U. S. 240, 249, 54 L. ed. 464, 468, 30 Sup. Ct. Rep. 338, as follows: "Whenever, in pursuance of the legislation of Congress, rights have become vested, it becomes the duty of the courts to see that those rights are not disturbed by any action of an executive officer, even the Secretary of the Interior, the head of a department. However laudable may be the motives of the Secretary, he, as all others, is bound by the provisions of congressional legislation." This was but an approval of *Garfield* v. *United States,* 211 U. S. 249, 262, 53 L. ed. 168, 174, 29 Sup. Ct. Rep. 62, where the court said: "There is no place in our constitutional system for the exercise of arbitrary power, and if the Secretary has exceeded the authority conferred upon him by law, then there is power in the courts to restore the status of the parties aggrieved by such unwarranted action."

The decree is reversed with costs, and the cause is remanded with instructions to enter a decree restraining defendants from rejecting and canceling plaintiff's selection list, with directions to vacate the order withdrawing the land in suit for a power site, and to approve plaintiff's selection for patent.

*Reversed and remanded.*

An appeal to the Supreme Court of the United States was allowed May 5, 1917.