**UNITED STATES of America,**
**Plaintiff-Appellant,**

**and**

**Bertha Mae Tabbytite,**
**Plaintiff-Intervenor,**

v.

**Glen M. CLARKE et al.,**
**Defendants-Appellees.**

**No. 74–1659.**

United States Court of Appeals,
Ninth Circuit.

Feb. 4, 1976.

Carl Strass, Atty. (argued), Lands & Natural Resources, U. S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Albert Maffei (argued), Anchorage, Alaska, for defendant-appellee.

Randall E. Farleigh (argued), of Robison, McCaskey, Strachan, & Hoge, Anchorage, Alaska, for defendant-appellee, Anchorage Natural Gas.

## OPINION

Before DUNIWAY, TRASK and SNEED, Circuit Judges.

DUNIWAY, Circuit Judge:

The United States, joined by Bertha Mae Tabbytite as an intervenor, brought suit to enjoin the defendant class from trespassing on land patented to Tabbytite, an Indian, under 25 U.S.C. §§ 331–32 as an Indian trust allotment, and to recover compensatory and punitive damages for trespass upon that land from 1958 through 1969. The district court denied an injunction, finding that the defendants had an easement implied by necessity across Tabbytite's land, but awarded plaintiffs $3,500 in compensatory damages—$2,000 for past trespasses and $1,500 for prospective trespasses. The United States appeals and we reverse.

Tabbytite's 160 acres of land are located in the Chugach Mountains southeast of Anchorage, Alaska. In November, 1956, she filed a homestead application for the land with the Department of the Interior.[1] A year and a half later, in June, 1958, Glen Clarke, the principal named defendant, applied for a homestead on an adjoining 80-acre parcel. To secure access to a public highway, Clarke constructed a road across Tabbytite's land in the late summer of 1958. The

1. Tabbytite first applied for a homestead on this land in 1954. She later abandoned her application, but was permitted to refile in 1956 pursuant to 43 U.S.C. § 182 (1970).

district court held that his doing so and using the road was a continuing trespass, for which it awarded damages. It is undisputed that Clarke never obtained a grant of an easement from anyone.

After securing his patent in 1961, Clarke subdivided his property into 40 parcels, most of which he sold before this suit commenced. Tabbytite was not as fortunate. Between 1958 and 1966, Clarke and his former wife filed three separate contests to Tabbytite's patent application. Clarke admitted at trial that he was aware of 43 U.S.C. § 185 which gives a successful contestant a preference to the cancelled homestead. Although Tabbytite prevailed in these contests, she could not get her patent while the contests were pending. Apparently despairing of ever securing the land via the homestead route, she elected to abandon her homestead application and take the land as an Indian trust allotment. However, there was no break in her possession.

During this same period Tabbytite made several attempts to bar those whom she considered trespassers from crossing her property. She posted "no trespassing" signs, and once, in 1967, sought to block the road physically. On this occasion, Clarke told her that Alaska law prohibited the blocking of a public highway and warned that she would be arrested if she persisted. She did not, choosing instead to notify the Bureau of Indian Affairs in Anchorage of her problem. On the advice of the Bureau, the United States, which holds legal title to Tabbytite's trust allotment, filed this action in 1969.

■ The substance of Clarke's[2] defense is that he has an easement of necessity across Tabbytite's land, and the trial court so held. Clarke cites *United States v. Dunn*, 9 Cir., 1973, 478 F.2d 443, for the proposition that a land patent may include such an implied ease-

ment across adjacent land still held by the federal government. *Dunn* is inapplicable here, because Tabbytite's trust allotment is not federal land and was not when Clarke applied for his homestead or when he got his patent. Her entry for purposes of homesteading in 1956 separated the land from the public domain. *Knapp v. Alexander-Edgar Lumber Co.*, 1915, 237 U.S. 162, 166–67, 35 S.Ct. 515, 59 L.Ed. 894. Legal title remained in the government, but as against all except the United States, she was vested with all the incidents of fee simple title when she entered. *United States v. Buchanan*, 1914, 232 U.S. 72, 76–77, 34 S.Ct. 237, 58 L.Ed. 511. Clarke's claim to an easement of necessity through the public domain, even assuming it to be meritorious, cannot give him any such right against Tabbytite. *Cf.* 3 Tiffany on Real Property § 793 (3rd ed.).

■ In the alternative Clarke argues that he is the successor in interest of the United States, and that the United States had retained an implied easement of necessity across Tabbytite's land when she first homesteaded. This argument also must fail. The government never had an easement of necessity over Tabbytite's land.[3] She was one of the first homesteaders in the area. At the time of her entry in 1956, the land which later became Clarke's homestead was not landlocked. Rather, it was a small part of other substantial contiguous federal holdings across which the government could get access to what later became Clarke's homestead. Only after Tabbytite entered were these federal lands transferred to other homesteaders, including Clarke, and to the state of Alaska. No easement of necessity ever arose over Tabbytite's land because, when her parcel was separated from the public domain, the grantor, the United States, retained access to its remaining property,

---

**2.** We refer only to Clarke because all other defendants are his successors in interest. If he has no implied easement, they also have none.

**3.** We ignore 48 U.S.C. § 321d, repealed 73 Stat. 146 (1959), which reserved in all Alaska patents a right of way to the United States for public roads and highways. Clarke could have acquired no rights under this section.

including what later became Clarke's property, across land that it still held. *Cf. Smith v. DeFreitas*, 3 Cir., 1964, 329 F.2d 629, 633–34.

██ Moreover, if we were to assume that the government had an easement, it never passed to Clarke. Accepting Clarke's contention that *Dunn, supra,* supports the principle that a patent may carry with it an implied right of way across federal land, it does not follow that Clarke succeeded to an easement across Tabbytite's trust allotment. As Clarke knew in 1961 when he received his patent, it was then as necessary to cross the land belonging to Tabbytite to reach his homestead as he now says that it is. He could have asked that any easement which his grantor, the United States, possessed be conveyed to him. He did not, and he is not now in a position to ask this court to enlarge the scope of his patent. *See Great Northern Railway Co. v. United States*, 1942, 315 U.S. 262, 272, 62 S.Ct. 529, 86 L.Ed. 836. Any inclination we might otherwise have to assist Clarke is more than counterbalanced by Clarke's highhanded behavior in attempting to take what was not his, and by the existence of Tabbytite's right to an unencumbered title to her allotment. *United States v. Wood*, 9 Cir., 1972, 466 F.2d 1385, 1387–88.

As Clarke had no easement of necessity across Tabbytite's land, it follows that his successors in interest have none either.

The judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.